IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEXTER BERT TYSON | : | |
| | : | |
| v. | : | Civil No. CCB-13-2919 |
| | : | (Criminal No. CCB-03-0056) |
| | : | |
| UNITED STATES OF AMERICA | : | |

## MEMORANDUM

Now pending is Dexter Bert Tyson's ("Tyson") motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Tyson originally went to trial in June 2004, but was granted a new trial based on the perjured testimony of a government witness. On October 13, 2005, Tyson was convicted by a jury on eight counts of drug and firearms charges. On December 29, 2005, Tyson filed a motion for a new trial. On January 13, 2006, this court denied the motion for a new trial and sentenced Tyson to life imprisonment. On July 27, 2007, while an appeal to the Fourth Circuit was pending, Tyson filed another motion for a new trial. On December 1, 2009, this court denied that request. On February 1, 2012, Tyson's convictions and sentence were affirmed by the Fourth Circuit. *United States v. Tyson*, 462 F. App'x 402 (4th Cir. 2012); (ECF No. 290.) Tyson now raises nine grounds to justify relief from his sentence under 28 U.S.C. § 2255, and brings a separate motion seeking discovery. For the reasons stated below, Tyson's motions will be denied.

## ANALYSIS

Tyson raises several grounds in his § 2255 motion, none of which justify relief from his conviction and sentence. The court will address each in turn.

Ground One:

1

Tyson first argues that prosecutorial misconduct in offering the false testimony of Anne Arundel County Detective William Caputo ("Caputo") justifies relief. In particular, Tyson alleges that Caputo stated he surveilled Tyson on dates when Tyson was actually incarcerated, and that Caputo's December 6, 2002, report referenced in the search warrant affidavit was false, because it included a case number that was not assigned until after that date and information about record checks that Caputo ran after that date. A defendant may not relitigate issues previously rejected on direct appeal under the guise of a collateral attack.[1] *See United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)). Here, the Fourth Circuit affirmed Tyson's convictions and explicitly rejected the arguments regarding the surveillance and record checks. (4th Cir. Op. 13, 15-16.) Further, this court has held on multiple occasions that any discrepancies in the dates from Caputo's testimony or reports are not material, (*see, e.g.*, Gov't Resp. Opp'n Ex. 2, Dec. 1, 2009, Mem., ECF No. 316-2; *id.* Ex. 5, Jan. 13, 2006, Transcript, ECF No. 316-5), and the Fourth Circuit agreed that, "even assuming that Caputo's affidavit was intentionally false and misleading" – for which Tyson has offered no proof – "probable cause would still have existed," (4th Cir. Op. 15). Tyson has provided no information in his § 2255 motion to suggest prosecutorial misconduct, or to justify his request for additional information about the confidential information Caputo used. Relief on this ground will be denied.

Ground Two:

Tyson next argues that he suffered a due process violation when the Anne Arundel County Police Department disregarded its internal policies by allowing Caputo to intentionally file a false report. Tyson did not raise this argument on direct appeal. By not raising it on direct

---

[1] Although Tyson styles this argument as one of prosecutorial misconduct, and in the appeal it was targeted at this court's denial of a *Franks* hearing, see *Franks v. Delaware*, 438 U.S. 154 (1978), the content of the two arguments are identical.

appeal, and by failing to demonstrate cause and prejudice or his actual innocence, the argument is waived. *See United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). Even if it were not waived, and even if Tyson could show that Caputo intentionally made false statements, the argument fails because, as the government points out, a violation of the Police Department's internal procedures, standing alone, does not infringe upon Tyson's constitutional rights. *United States v. Caceres*, 440 U.S. 741, 754-55 (1979) (rejecting judicial enforcement of agency regulations by means of the exclusionary rule where no constitutional rights of the defendant have been violated). Here, Tyson cannot show either a violation of Department policies or that his constitutional rights were infringed. Therefore, he is not entitled to relief on this ground.

Ground Three:

Tyson's third argument in support of his § 2255 motion is that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing evidence about Caputo's allegedly false testimony. This particular argument is waived because it was not raised on direct appeal, and Tyson has not shown cause and prejudice or his actual innocence. *Mikalajunas*, 186 F.3d at 492-93. Even if it were not waived, Tyson cannot establish a *Brady* violation. To prove a *Brady* violation, a defendant must show that the evidence was (1) favorable to the defendant, (2) material, and (3) that the prosecution had the evidence and failed to disclose it. *See Moore v. Illinois*, 408 U.S. 786, 794-95 (1972); *United States v. Stokes*, 261 F.3d 496, 502 (4th Cir. 2001). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Here, the relevant evidence was not material; this court and the Fourth Circuit found that probable cause still would have existed to support the search warrant without the misstatements. (4th Cir. Op. 15.) Further, Caputo's report was produced. Because Tyson

cannot meet two of the three requirements necessary to prove a *Brady* violation, the requested relief will be denied.

Ground Four:

Tyson next alleges that his counsel was ineffective for failing to lodge the proper objection to the government's use of forfeiture claims filed by Tyson with the Drug Enforcement Agency ("DEA") seeking the return of over $55,000 seized on January 9, 2003. Tyson may raise an ineffective assistance of counsel claim for the first time in a § 2255 motion, whether or not he could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To sustain a claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must show "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In evaluating such conduct, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Here, Tyson acknowledges that his counsel objected to the introduction of the DEA claims, as Tyson suggested. (Mem. Supp. Mot. Vacate 11, ECF No. 310.) Tyson now argues that, instead of (or, perhaps, in addition to) objecting on evidentiary grounds, counsel should have objected that admitting the claims violated Tyson's Fifth Amendment rights, an argument his counsel raised on appeal. First, as noted in its opinion, the Fourth Circuit has not addressed whether it would violate a defendant's Fifth Amendment rights to introduce in a criminal case a previous statement by him claiming an interest in property made in order to receive a forfeiture hearing. (4th Cir. Op. 9.) Tyson's representation, therefore, did not fall below an objective standard of

reasonableness when his counsel did not object on grounds of law undecided in this Circuit. Further, even if Tyson could meet the first prong of the *Strickland* test, the exclusion of the evidence would not have changed the outcome of the proceedings, given that the Fourth Circuit found there to be "a wealth of evidence tying Tyson to the apartment, and by extension, the cash and the drugs." (*Id.*) As a result, this claim fails.

Ground Five:

Tyson next argues that his counsel was ineffective for failing to introduce evidence about the alleged unreliability of the police K-9 that gave a positive alert on a white van, helping to establish the probable cause necessary to search the apartment at 411 Raindrop Court. According to Tyson, counsel obtained evidence about the K-9's unreliability but failed to use that information to challenge the probable cause finding for the search warrant. (Mem. Supp. Mot. Vacate 12.) As an initial matter, Tyson acknowledges that his attorney in fact questioned the value of the K-9 alert for establishing probable cause, arguing during the pre-trial stages of this case that a positive alert does not necessarily mean drugs were present. (*Id.*) Further, counsel must be given "wide latitude . . . in making tactical decisions," and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 689, 690. Tyson's attorney investigated the reliability of the K-9 at issue and apparently decided not to introduce the evidence Tyson identifies. This decision was not unreasonable; counsel may have thought the additional information did not add anything to his initial objections, did not in fact support a conclusion that the K-9 was unreliable, or did not help his client (if, for example, the dog gave too many negatives, as Tyson argues). Finally, even if counsel's decision was unreasonable and objecting to the K-9 alert would have resulted in its suppression, the result of the proceeding would have been no different. This court

has held on several occasions that there was "ample" probable cause in the 411 Raindrop Court search warrant affidavit. (Dec. 1, 2009, Mem. 1; Jan. 13, 2006, Transcript 33.) Indeed, as the government points out, there is significant case law to support a finding of probable cause solely on the basis of a trash pull that tests positive for drugs and connects the defendant to the trash. *See, e.g.*, *United States v. Montieth*, 662 F.3d 660, 665 (4th Cir. 2011) (finding that probable cause existed based on "the considerable evidence of drug trafficking discovered in the trash pull, and the information linking the drug trafficking materials to [the defendant] and his residence"); *United States v. Gary*, 528 F.3d 324, 326, 328-29 (4th Cir. 2008) (finding that probable cause existed when a police officer found two plastic bags containing white powder residue, and materials often used for packaging narcotics, in trash bags sufficiently connected to the relevant residence). Tyson is not entitled to relief on this ground.

Ground Six:

Tyson also argues that his attorney was ineffective because he failed to appeal the district court's exclusion of the Data Extraction Sheet compiled by the Maryland Motor Vehicle Administration ("MVA") that showed Caputo in fact did not check records until after the date of his investigative report. This argument also fails. As an initial matter, Tyson's counsel was not required to raise all issues on appeal. *Keel v. French*, 162 F.3d 263, 272 (4th Cir. 1998) ("[A]ppellate counsel is not required to raise an issue on appeal merely because it is not frivolous."). Given that Tyson's counsel unsuccessfully objected in 2006 to the suppression of evidence that identified the sequencing issues with Caputo's report and record checks, (Jan. 13, 2006, Transcript 32-33), it was not unreasonable for him not to raise the issue on appeal. Further, although Tyson's counsel did not appeal this court's suppression of the Data Extraction Sheet, he did appeal its determination that the information regarding the dates of the MVA record checks

did not warrant a *Franks* hearing. (*See* 4th Cir. Op. 15.) As stated above, the Fourth Circuit held that "the incorrect dates appear to be nothing more than misstatements or mistakes," and probable cause still would have existed to support the search warrant even without the alleged misstatements. (*Id.*) Tyson has not established that his counsel was ineffective for failing to appeal this court's suppression of the Data Extraction Sheet.

Ground Seven:

Tyson also argues that counsel was ineffective for failing to investigate or call Brent Pariag ("Pariag"), Tyson's brother, as a defense witness. Tyson has submitted an affidavit signed by Pariag, in which Pariag avers that he obtained a driver's license using, and opened a bank account and several credit cards in, Tyson's name; found a job and paid taxes for this job using his brother's name; rented an apartment at 1428 Church Street in Tyson's name; purchased a black Honda Accord in Tyson's name and registered it to the Church Street address; paid the bills for the 411 Raindrop Court apartment in his brother's name; and owned the receipts and other items in Tyson's name that were found during the search of the apartment at 411 Raindrop Court. (Mot. Correct Scrivener's Error Ex. 2, Pariag Aff. 1, ECF No. 313-2.)[2] Tyson's attorney did not call Pariag at trial. Instead, he called Brandy Scott Brown ("Scott Brown"), the mother of Tyson's daughter, (Gov't Resp. Opp'n Ex. 7, Scott Brown Transcript, ECF No. 316-7), and Veda Scott ("Scott"), Scott Brown's grandmother, (Gov't Resp. Opp'n Ex. 8, Brown Transcript, ECF No. 316-8). Scott Brown testified that Tyson owned a black Honda Accord, (Scott Brown Transcript 103), and rented an apartment at 411 Raindrop Court, (*id.* at 109). She also testified that the Accord was locked in her grandmother's garage from September 2002 to December 9,

---

[2] Tyson did not include his or Pariag's affidavit as an exhibit to his memorandum in support of his motion to vacate. Tyson has submitted these affidavits separately in what is styled as a motion to correct scrivener's error. (ECF No. 313.) Because the government does not appear to contest the submissions, the court will assume without deciding that the affidavits may be included as part of the record.

7

2002, and that she was the sole possessor of the car keys during this time period. (*Id.* at 108.) Scott testified that the Accord was stored in the garage for that entire period, and that only she had a key to the garage. (Scott Transcript 148, 152.) The import of this information was to contradict investigator testimony that Tyson left the Raindrop Court apartment and entered the Honda Accord on December 2, 2002, because the car was in Scott's garage – and Tyson was incarcerated – on December 2, 2002.

An attorney's representation may be deficient "when he failed to contact and interview important prospective witnesses, especially when they were readily available or had been identified by the defendant prior to trial." *Huffington v. Nuth*, 140 F.3d 572, 580 (4th Cir. 1998). "Although 'a lawyer's failure to investigate a witness who has been identified as crucial may indicate an inadequate investigation, the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance.'" *Id.* (quoting *Gray v. Lucas*, 677 F.2d 1086, 1093 n.5 (5th Cir. 1982)). Moreover, the decision whether to call a defense witness is a strategic decision, demanding counsel's "assessment and balancing of perceived benefits against perceived risks," to which courts should afford "enormous deference." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (internal quotation marks omitted). As an initial matter, it appears that Tyson's counsel did consider calling Pariag as a witness: he is listed fifth on the defendant's proposed witness list. (Mem. Supp. Mot. Vacate Exs. 77, Def.'s Proposed Witness List, ECF No. 310-2.) Further, several legitimate reasons exist for why Tyson's counsel ultimately decided not to call Pariag. Tyson's counsel reasonably could have concluded that trying to establish through the testimony of Scott Brown and Scott that Tyson was not in possession of the Honda Accord at the time of the police surveillance was a more effective tactic than advancing a sweeping claim by Pariag that everything in Tyson's name actually

8

belonged to him. Further, calling Pariag as a witness would have contradicted Scott Brown's claims that Tyson owned the Honda Accord and rented the apartment at 411 Raindrop Court. Considering credibility, Pariag would have had to admit that he submitted false MVA forms and lied on his tax returns. And Pariag did not take responsibility for the drugs in his affidavit, even though he is now serving a sentence for possession with intent to distribute cocaine base. *United States v. Pariag*, No. 05-0374 (D. Md. Feb. 10, 2006). This combination of potentially conflicting testimony and the credibility issues inherent in Pariag's testimony, along with the strong presumption that counsel's conduct fell within the range of reasonable professional assistance, demonstrates that counsel's decision not to further investigate or call Pariag did not render his representation constitutionally deficient. Tyson is not entitled to relief on this claim.[3]

Ground Eight:

Next, Tyson argues that this court made factual findings in sentencing him to life imprisonment in violation of *Alleyne v. United States*, 133 S. Ct. 2151 (2013), in which the Supreme Court held that any fact that increases a mandatory minimum sentence for a crime is an element of the crime that must be submitted to the jury. This argument does not withstand scrutiny. Counts I and II of the indictment charged Tyson with offenses that carried mandatory sentences of life imprisonment given his prior convictions for felony drug offenses.[4] (Gov't

---

[3] Under 28 U.S.C. § 2255, a hearing is required unless it is clear from the motions, files, and records that the movant is not entitled to relief. 28 U.S.C. § 2255(b). When a movant presents a colorable Sixth Amendment claim, and where material facts are in dispute involving inconsistencies beyond the record, an evidentiary hearing is required. *See United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992). Nonetheless, the two affidavits that Tyson submitted do not necessitate a hearing. For the reasons described above, Tyson would not be entitled to relief even assuming his allegations were true as a result of the deference given to counsel regarding trial strategy and the multiple issues raised by Pariag's proposed testimony.

[4] The jury found Tyson guilty of, *inter alia*, conspiring to distribute and possess with intent to distribute, and possessing with intent to distribute, fifty grams or more of cocaine base. (Gov't Resp. Opp'n Ex. 9, Jury Verdict Form, ECF No. 316-9.) Before passage of the Fair Sentencing Act of 2010 ("FSA"), 124 Stat. 2372, these convictions resulted in a mandatory term of life imprisonment for defendants, like Tyson, with two or more felony drug convictions. Because Tyson was sentenced before 2010, he is not eligible for relief under the FSA. *See Dorsey v. United States*, 132 S. Ct. 2321, 2331 (2012) (holding that the FSA's new, lower mandatory minimums apply only to the post-Act sentencing of pre-Act offenders); *United States v. Black*, 737 F.3d 280, 282, 284-85 (4th Cir. 2013)

Resp. Opp'n Ex. 1, Indictment, ECF No. 316-1.); *see also* 21 U.S.C. § 841(a)(1) (2006); 21 U.S.C. § 846. As required by 21 U.S.C. § 851(a)(1), the government filed an information listing the prior felony drug convictions on which it sought to rely. Because prior convictions are not treated as elements of the offense, the § 851 notice does not bring this case within the scope of *Alleyne*. *See Alleyne*, 133 S. Ct. at 2160 n.1 (stating that the Court was not revisiting *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)); *United States v. Surratt*, 797 F.3d 240, 248 (4th Cir. 2015) (noting that prior convictions are not treated as elements of an offense). Therefore, *Alleyne* does not entitle Tyson to relief.

Ground Nine:

Tyson attached a handwritten note to his motion to vacate that offers a final ground in support of his § 2255 motion. In particular, he alleges his counsel was ineffective for failing to raise on appeal the sufficiency of the evidence of Counts I, II, and V. (Mot. Vacate 9B, ECF No. 307.) As stated above, in evaluating whether counsel's representation fell below an objective standard of reasonableness, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Tyson's counsel adequately represented him. He three times brought motions for a new trial – the first one was successful – and appealed his client's guilty verdict to the Fourth Circuit. Tyson's attorney raised five issues on appeal. Which issues to raise on appeal is properly left to the determination of counsel, *see Keel*, 162 F.3d at 272, and counsel *should* be strategic in making this determination. In its opinion, the Fourth Circuit stated that there was "a wealth of evidence" tying Tyson to the evidence in this case, (4th Cir. Op. 9), and there is no indication that the decision by Tyson's attorney not to challenge the sufficiency of the evidence was anything but tactical. Tyson cannot

---

(concluding that the statutory minimum sentences in the FSA do not apply to a defendant sentenced before the Act's effective date).

meet the first element of the *Strickland* test requiring him to demonstrate that his counsel's representation fell below an objective standard of reasonableness.

Motion Seeking Discovery

Tyson also moves under the rules governing § 2255 proceedings for leave to seek discovery to support his petition. Rule 6(a) instructs that a court may authorize a party to conduct discovery for "good cause," and good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (alteration in original) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Tyson's motion seeking discovery, which rehashes many of the arguments he makes in his § 2255 petition, does not present good cause. Therefore, his motion will be denied.

Certificate of Appealability

An inmate who files a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. *See* 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). Tyson has not made the required showing and the court declines to issue a certificate of appealability.

**CONCLUSION**

For the reasons stated above, Tyson's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 will be denied, and a certificate of appealability will not issue. His motion seeking discovery will be denied. A separate order follows.

<u>November 18, 2015</u>                            <u>      /s/             </u>

Date                                                                             Catherine C. Blake
                                                                            United States District Judge